**Case Nos. 26-1736 & 26-1989**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

---

**DRE HEALTH CORPORATION,**

**Plaintiff – Appellee,**

**vs.**

**BERKLEY EQUITY LIMITED and ANTHONY LYONS,**

**Defendants – Appellants,**

**STUART N. KAPLAN and STUART N. KAPLAN, P.A.,**

**Defendants.**

---

**Appeal from U.S. District Court, Western District of Missouri**
**Honorable Roseann A. Ketchmark, U.S. District Judge**
**Case No. 4:22-cv-00031-RK**

---

# BRIEF OF THE APPELLANTS

---


Jonathan Sternberg, Mo. #59533
*Jonathan Sternberg, Attorney, P.C.*
2323 Grand Boulevard #1100
Kansas City, Missouri 64108
(816) 292-7020
jonathan@sternberg-law.com

COUNSEL FOR APPELLANTS


**ORAL ARGUMENT REQUESTED**

## Summary and Request for Oral Argument

Berkley Equity Limited, owned by Anthony Lyons, agreed to purchase $196 million of COVID-19 face masks from DRE. DRE misrepresented that it possessed the facilities, personnel, and capacity to supply them. Berkley paid a $3 million deposit under an agreement requiring timely satisfactory delivery, inspection, and documentation.

DRE did not timely deliver the promised product or required documents. The parties memorialized DRE's default in an Addendum, which extended its time to perform and required it to pay Berkley $1.5 million. DRE paid only $1 million and then sued Berkley for the remaining price and more than $169 million in damages.

The district court granted DRE summary judgment on contract liability, but a ten-day trial ended in a unanimous jury verdict awarding no contract damages and rejecting every tort claim.

Fourteen months later, the district court replaced that verdict with a $232 million judgment, conditionally ordered a new contract-damages trial, ordered a new tort trial, and imposed liability personally on Mr. Lyons. This was error. This Court should reinstate the original judgment or, at minimum, order a complete new trial, reverse the personal liability order, and reassign the case to a new district judge.

The issues on appeal are complex, subtle, and fact intensive. The interchange of 20 minutes' oral argument per side would assist the Court in deciding them.

## Corporate Disclosure Statement

Appellant Berkley Equity Limited has no parent corporation and no publicly held corporation owns more than 10% of its stock.

## Table of Contents

Summary and Request for Oral Argument ........ i

Corporate Disclosure Statement ........ ii

Table of Contents ........ iii

Table of Authorities ........ vi

Jurisdictional Statement ........ 1

Statement of the Issues ........ 2

Statement of the Case ........ 5

A. Background to the proceedings below ........ 5

1. The parties and the proposed transaction ........ 5

2. The parties' performance and the breakdown of the transaction ........ 8

B. Proceedings below ........ 13

1. Claims and counterclaims ........ 13

2. Partial summary judgment ........ 13

3. Trial and verdict ........ 17

4. Post-trial proceedings ........ 20

Summary of the Argument ........ 25

Argument ........ 27

I. The district court erred by replacing the jury's unanimous defense verdict with a $232 million judgment. ........ 27

Standard of Appellate Review ........ 27

A. Summary ........ 27

B. Rule 50 required the court to view the evidence and draw reasonable inferences for Berkley, not weigh credibility ........ 28

C. DRE bore the burden of proving damages, and the jury could reject its witnesses and calculations without a competing damages expert. .................................................... 31

D. Neither the rescinded $14.4 million partial-summary-judgment determination nor the availability of nominal damages authorized a $165 million judgment. ......................... 34

II. The district court erred in ordering a new trial. .......................... 38

Standard of Appellate Review ..................................................... 38

A. Summary............................................................................. 38

B. DRE waived its contention that the zero-damages verdict on its contract claims was legally inconsistent. ........................ 39

C. DRE cannot transform corrected incidents into incurable prejudice when it never sought a mistrial. .............................. 40

D. The misconduct and evidentiary rulings DRE raised did not affect its substantial rights. ............................................. 41

E. The contract verdict was not against the weight of the evidence. ............................................................................. 43

III. The district court erred in granting DRE partial summary judgment on liability for its contract claims and on Berkley's counterclaims. ............................................................................ 45

Standard of Appellate Review ..................................................... 45

A. Viewed most favorably to Berkley, DRE breached first and the parties' contract claims required trial. ........................ 46

B. Berkley's fraudulent inducement claim was not abandoned, and its theory that DRE lacked existing capacity was independent of DRE's contractual promises. ...... 49

IV. The district court erred in holding Mr. Lyons personally liable for Berkley's judgment. ....................................................... 52

Standard of Appellate Review ..................................................... 52

A. DRE waived veil-piercing when it did not plead personal liability on its contract claims and Berkley did not consent to try it. .......... 52

B. Berkley's capitalization did not establish wrongful use of the corporate form. .......... 55

C. DRE did not prove that any misuse of the corporate form caused its loss. .......... 57

V. This Court should reassign any further proceedings below to a different district judge.......... 59

Standard of Appellate Review .......... 59

Conclusion .......... 62

Certificate of Compliance .......... 63

Certificate of Service .......... 64

Addendum .......... (filed separately)

R.Doc. 291: Judgment in a Civil Action (Jan. 30, 2025) .......... A1

R.Doc. 121: Order (Mar. 26, 2024) .......... A2

R.Doc. 217: Order (Dec. 6, 2024) .......... A14

R.Doc. 345: Order (Mar. 20, 2026) .......... A33

R.Doc. 345-1: Appendix – Chart of Trial Misconduct (Mar. 20, 2026) .......... A132

R.Doc. 346: Order (Mar. 20, 2026) .......... A356

R.Doc. 374: Order (Apr. 23, 2026) .......... A367

R.Doc. 391: Order (May 11, 2026) .......... A369

Excerpt from Exhibit 1 .......... A381

Excerpt from Exhibit 5 .......... A393

Certificate of Service .......... A395

<u>**Table of Authorities**</u>

**Cases**

*66, Inc. v. Crestwood Commons Redev. Corp.*, 998 S.W.2d 32 (Mo. 1999) .... 56

*Am. Bank of St. Paul v. TD Bank, N.A.*, 713 F.3d 455 (8th Cir. 2013) .... 27, 41

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .... 29, 45

*Baker v. John Morrell & Co.*, 382 F.3d 816 (8th Cir. 2004) .... 54

*Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477 (7th Cir. 2000) .... 30

*Blake v. J.C. Penney Co.*, 894 F.2d 274 (8th Cir. 1990) .... 2, 43

*Blanks v. Fluor Corp.*, 450 S.W.3d 308 (Mo. Ct. App. 2014) .... 55

*Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618 (5th Cir. 2008) .... 30

*Butler v. French*, 83 F.3d 942 (8th Cir. 1996) .... 43

*BVS, Inc. v. CDW Direct, LLC*, 759 F.3d 869 (8th Cir. 2014) .... 3, 49

*Cioffe v. Morris*, 676 F.2d 539 (11th Cir. 1982) .... 55

*Cole v. Homier Distrib. Co.*, 599 F.3d 856 (8th Cir. 2010) .... 29

*Collet v. Am. Nat'l Stores, Inc.*, 708 S.W.2d 273 (Mo. Ct. App. 1986) .... 55, 57

*Connelly v. Cnty. of Rockland*, 61 F.4th 322 (2d Cir. 2023) .... 30

*Copper v. City of Fargo*, 184 F.3d 994 (8th Cir. 1999) .... 43

*Dees v. Cnty. of San Diego*, 960 F.3d 1145 (9th Cir. 2020) .... 30

*DiCarlo v. Keller Ladders, Inc.*, 211 F.3d 465 (8th Cir. 2000) .... 32

*Dimick v. Schiedt*, 293 U.S. 474 (1935) .... 37

*Duncan v. Kelly*, 435 S.W.2d 29 (Mo. Ct. App. 1968) .... 36

*Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421 (Mo. 2003) .......... 3, 46

*Farrington v. Smith*, 707 F.3d 963 (8th Cir. 2013).......... 42

*Fireman's Fund Ins. Co. v. Aalco Wrecking Co.*, 466 F.2d 179 (8th Cir. 1972).......... 2, 43

*Fisher v. City of San Jose*, 558 F.3d 1069 (9th Cir. 2009).......... 30

*Forney v. Mo. Bridge & Concrete, Inc.*, 112 S.W.3d 471 (Mo. Ct. App. 2003).......... 31, 32

*Foster v. Time Warner Entm't Co.*, 250 F.3d 1189 (8th Cir. 2001).......... 27

*Gateway Foam Insulators, Inc. v. Jokerst Paving & Contracting, Inc.*, 279 S.W.3d 179 (Mo. 2009).......... 33

*Geier v. Mo. Ethics Comm'n*, 715 F.3d 674 (8th Cir. 2013).......... 38

*Guidry v. Charter Comm'cns, Inc.*, 269 S.W.3d 520 (Mo. Ct. App. 2008).......... 46, 47

*Hardwood Lumber, Inc. v. Brewco Inc.*, No. 6:18-cv-03299-RK, 2020 WL 3415871 (W.D. Mo. June 22, 2020).......... 51

*Harrison v. Purdy Bros. Trucking Co.*, 312 F.3d 346 (8th Cir. 2002).......... 40, 41

*Hiser v. XTO Energy, Inc.*, 768 F.3d 773 (8th Cir. 2014).......... 38

*Hortica-Florists' Mut. Ins. Co. v. Pittman Nursery Corp.*, 729 F.3d 846 (8th Cir. 2013).......... 28

*In re Luebbert*, 987 F.3d 771 (8th Cir. 2021).......... 36

*In re RFC & ResCap Liquidating Tr. Action*, 399 F. Supp. 3d 804 (D. Minn. 2019).......... 33

*KC Roofing Ctr. v. On Top Roofing, Inc.*, 807 S.W.2d 545 (Mo. Ct. App. 1991).......... 57

*Kennon v. Gilmer*, 131 U.S. 22 (1889).......... 37

*Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98 (Mo. 2010).......... 46

*Kim v. Nash Finch Co.*, 123 F.3d 1046 (8th Cir. 1997) .......................... 54

*Langford v. Norris*, 614 F.3d 445 (8th Cir. 2010) .................................. 35

*Lockard v. Mo. Pac. R.R. Co.*, 894 F.2d 299 (8th Cir. 1990) ................... 39

*Madden v. Lumber One Home Ctr., Inc.*, 745 F.3d 899
(8th Cir. 2014) ........................................................................ 30

*Martin v. Moscowitz*, 272 F. App'x 44 (2d Cir. 2008) ............................. 30

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574
(1986) .................................................................................... 45

*Medtronic, Inc. v. Roadway Express, Inc.*, 10 F. App'x 431
(9th Cir. 2001) ........................................................................ 30

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365
(Fed. Cir. 2001) ...................................................................... 30

*Miller v. Albright*, 657 F.3d 733 (8th Cir. 2011) ................................ 2, 39

*Murphy Oil USA, Inc. v. Wood*, 438 F.3d 1008 (10th Cir. 2006) ........... 30

*Mycogen Plant Sci. v. Monsanto Co.*, 243 F.3d 1316
(Fed. Cir. 2001) ...................................................................... 36

*Pulla v. Amoco Oil Co.*, 72 F.3d 648 (8th Cir. 1995) .............................. 40

*Radaszewski v. Telecom Corp.*, 981 F.2d 305 (8th Cir. 1992) ............ 3, 55

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)
.................................................................................... 2, 27, 28

*Riordan v. Corp. of Presiding Bishop*, 416 F.3d 825 (8th Cir. 2005) ..... 44

*Salt Lake City v. Smith*, 104 F. 457 (8th Cir. 1900) .............................. 40

*Sansone v. Moseley*, 912 S.W.2d 666 (Mo. Ct. App. 1995) ...................... 57

*Sartor v. Ark. Nat. Gas Corp.*, 321 U.S. 620 (1944) ......................... 28, 29

*Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731
(8th Cir. 2009) ........................................................................ 49

*Sentis Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888 (8th Cir. 2009) ......... 4, 60

*Serv. Auto Supply Co. of P.R. v. Harte & Co., Inc.*, 533 F.2d 23 (1st Cir. 1976) .......... 33

*Sisson v. Patel*, No. 20-05101-CV-SW-BP, 2022 WL 497347 (W.D. Mo. Jan. 26, 2022) .......... 56

*Standard Title Ins. Co. v. Roberts*, 349 F.2d 613 (8th Cir. 1965) .......... 3, 53

*Stults v. Am. Pop Corn Co.*, 815 F.3d 409 (8th Cir. 2016) .......... 27

*Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890 (D. Minn. 2014) .......... 3, 50, 51

*TAMKO Roofing Prods., Inc. v. Smith Eng'g Co.*, 450 F.3d 822 (8th Cir. 2006) .......... 52

*Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc) .......... 45

*Trademark Med., LLC v. Birchwood Labs., Inc.*, 22 F. Supp. 3d 998 (E.D. Mo. 2014) .......... 51

*Trip Mate, Inc. v. Stonebridge Cas. Ins. Co.*, 768 F.3d 779 (8th Cir. 2014) .......... 3, 53

*Tumey v. Mycroft AI, Inc.*, 27 F.4th 657 (8th Cir. 2022) .......... 4, 59, 61

*United States v. Landau*, 155 F.3d 93 (2d Cir. 1998) .......... 2, 29

*United States v. Tucker*, 78 F.3d 1313 (8th Cir. 1996) .......... 4, 59, 60

*Vetter v. Farmland Indus., Inc.*, 120 F.3d 749 (8th Cir. 1997) .......... 2, 29

*Warger v. Shauers*, 574 U.S. 40 (2014) .......... 43

*Warren v. Fanning*, 950 F.2d 1370 (8th Cir. 1991) .......... 2, 40

*Web Innovations & Tech. Servs., Inc. v. Bridges to Digital Excellence, Inc.*, 69 F. Supp. 3d 928 (E.D. Mo. 2014) .......... 3, 50

*Weitz Co. v. MH Wash.*, 631 F.3d 510 (8th Cir. 2011) .......... 3, 55, 57

*White v. Pence*, 961 F.2d 776 (8th Cir. 1992) .......... 43

*Williams Constr., Inc. v. Wehr Constr., L.L.C.*, 403 S.W.3d 660 (Mo. Ct. App. 2012) .......... 33

*Willis v. State Farm Fire & Cas. Co.*, 219 F.3d 715 (8th Cir. 2000) ..................... 2, 30, 32

**Constitution of the United States**

Amend. VII ..................... 37

**United States Code**

28 U.S.C. § 1291 ..................... 1

28 U.S.C. § 1332 ..................... 1

28 U.S.C. § 2106 ..................... 59, 61

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 8 ..................... 52

Fed. R. Civ. P. 15 ..................... 53, 54

Fed. R. Civ. P. 46 ..................... 54

Fed. R. Civ. P. 50 ..................... 25, 27-30, 32, 34, 36-37, 44, 52, 62

Fed. R. Civ. P. 51 ..................... 40

Fed. R. Civ. P. 54 ..................... 1, 35, 54

Fed. R. Civ. P. 56 ..................... 29, 35

Fed. R. Civ. P. 59 ..................... 34, 38, 43

Fed. R. Civ. P. 61 ..................... 38, 41

**Federal Rules of Evidence**

Fed. R. Evid. 606 ..................... 43

**Federal Rules of Appellate Procedure**

Fed. R. App. P. 4 ..................... 1

Fed. R. App. P. 32 ..................... 63

## Jurisdictional Statement

Plaintiff-Appellee filed an action against Defendants-Appellants in the Western District of Missouri (App.Vol.1 60 R.Doc. 1, at 1). The defendants filed counterclaims (App.Vol.1 214-21 R.Doc. 49, at 34-41). The district court had subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2), as the plaintiff is a citizen of a state and the defendants are citizens of a foreign state, and the amount in controversy exceeds $75,000 (App.Vol.1 60-61 R.Doc. 1, at 1-2).

The district court entered judgment as a matter of law for the plaintiff on its contract claims on March 20, 2026, which incorporated a prior summary judgment order on liability for those claims and the defendants' counterclaims (App.Vol.14 3591 R.Doc. 345, at 1), along with an order piercing one defendant's corporate veil and holding the other personally liable for that judgment (App.Vol.16 3914 R.Doc. 346, at 1). On April 23, 2026, the district court certified those two orders as final and appealable under Fed. R. Civ. P. 54(b) (App.Vol.17 4279-80 R.Doc. 374, at 1-2). On May 11, 2026, the court added prejudgment interest to the certified judgment (App.Vol.17 4293, 4303-04 R.Doc. 391, at 1, 11-12).

The defendants filed their notice of appeal on May 19, 2026 (App.Vol.17 4305 R.Doc. 398, at 1). Under Fed. R. App. P. 4(a)(1)(A), the notice was timely, as it was within 30 days of the Rule 54(b) order.

Therefore, this Court has jurisdiction under 28 U.S.C. § 1291.

## **Statement of the Issues**

I. The district court erred by replacing the jury's unanimous defense verdict with a $232 million judgment.

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)

*Vetter v. Farmland Indus., Inc.*, 120 F.3d 749 (8th Cir. 1997)

*Willis v. State Farm Fire & Cas. Co.*, 219 F.3d 715 (8th Cir. 2000)

*United States v. Landau*, 155 F.3d 93 (2d Cir. 1998)

II. The district court erred in ordering a new trial.

*Miller v. Albright*, 657 F.3d 733 (8th Cir. 2011)

*Warren v. Fanning*, 950 F.2d 1370 (8th Cir. 1991)

*Fireman's Fund Ins. Co. v. Aalco Wrecking Co.*, 466 F.2d 179 (8th Cir. 1972)

*Blake v. J.C. Penney Co.*, 894 F.2d 274 (8th Cir. 1990)

III. The district court erred in granting DRE partial summary judgment on liability for its contract claims and on Berkley's counterclaims.

*BVS, Inc. v. CDW Direct, LLC*, 759 F.3d 869 (8th Cir. 2014)

*Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421 (Mo. 2003)

*Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890 (D. Minn. 2014)

*Web Innovations & Tech. Servs., Inc. v. Bridges to Digital Excellence, Inc.*, 69 F. Supp. 3d 928 (E.D. Mo. 2014)

IV. The district court erred in imposing DRE's contract judgment personally on Mr. Lyons because DRE did not plead that relief, Berkley did not consent to try it, and the evidence did not establish either wrongful use of control or causation.

*Trip Mate, Inc. v. Stonebridge Cas. Ins. Co.*, 768 F.3d 779 (8th Cir. 2014)

*Standard Title Ins. Co. v. Roberts*, 349 F.2d 613 (8th Cir. 1965)

*Weitz Co. v. MH Wash.*, 631 F.3d 510 (8th Cir. 2011)

*Radaszewski v. Telecom Corp.*, 981 F.2d 305 (8th Cir. 1992)

V. This Court should reassign any further proceedings below to a different district judge.

*Tumey v. Mycroft AI, Inc.*, 27 F.4th 657 (8th Cir. 2022)

*United States v. Tucker*, 78 F.3d 1313 (8th Cir. 1996)

*Sentis Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888 (8th Cir. 2009)

## Statement of the Case

### A. Background to the proceedings below

#### 1. The parties and the proposed transaction

DRE Health Corporation ("DRE") is a Missouri entity that sold personal protective equipment ("PPE") during the COVID-19 pandemic (App.Vol.1 60, 62 R.Doc. 1, at 1, 3; App.Vol.9 2391 R.Doc. 227, at 1). Ahmed "Isaac" Bawany was DRE's sole incorporator, served as its president and chief executive officer, and communicated DRE's positions and delivery information throughout the transaction at issue in this case (App.Vol.7 1644-45 R.Doc. 192-14, at 3-4; App.Vol.9 2391, 2393-96 R.Doc. 227, at 1, 3-6).

Anthony Lyons is chairman and sole owner of Berkley Equity Limited ("Berkley"), a British Virgin Islands entity formed to purchase and resell PPE; the parties stipulated that Berkley was a "shell company" (App.Vol.9 2391-92 R.Doc. 227, at 1-2; Ex. 1, at 1-4).

Norbert "Max" Dobi was a business intermediary who acted as Berkley's agent for the proposed purchase; Matthew Ortolani and Stephen Forrest arranged prospective buyers, shipping, and inspections, while Mr. Lyons retained authority to approve purchases (App.Vol.9 2392 R.Doc. 227, at 2; App.Vol.7 1709-11 R.Doc. 193, at 2-4).

On September 2, 2021, DRE and Berkley signed a Sale and Purchase Agreement ("the SPA") identifying DRE as producer and Berkley as buyer (Ex. 1, at 1; App.Vol.9 2392 R.Doc. 227, at 2).

The SPA contemplated an initial order of five million boxes of blue masks and one million boxes of black masks, with 50 masks in each box, followed by recurring weekly purchases in quantities measured in millions of boxes (Ex. 1, at 2-4). Berkley agreed to make an initial deposit of $3 million, and DRE agreed to begin production on confirmation of that deposit (Ex. 1, at 4-5). The agreement required "satisfactory delivery" of five million boxes within ten business days after the deposit and made an additional deposit due only after that delivery (Ex. 1, at 4-5). It also required invoices, packing lists, shipping information, and inspection or video evidence before specified payments, and it allowed Berkley to terminate and obtain return of its deposit if DRE breached or failed to deliver (Ex. 1, at 4-6).

Annex B to the SPA stated that the initial order's "current delivery schedule" was ten business days after DRE received the initial deposit and that once the deposit was received, "a more precise schedule" would be confirmed based on DRE's current orders (Ex. 1, at 12). Annex A described the product as DRE-DFM17 masks and included the notation "USA/PRC"; a separate bullet stated that masks "MADE IN THE UNITED STATES" were "AVAILABLE" (Ex. 1, at 11).

The version of the SPA DRE offered at summary judgment and trial contains Section 11(o), in a different font, stating that an invoice or purchase order controls any conflicting SPA term (Ex. 1, at 10). Mr. Lyons stated under oath that DRE inserted this provision after Berkley

signed, without Berkley's consent (App.Vol.7 1723-24 R.Doc. 193, at 16-17). DRE disputed that account, citing a September 2 WhatsApp exchange in which Mr. Dobi sent Mr. Lyons a version containing the provision and Mr. Lyons said he would sign it, as well as Berkley's earlier litigation position (App.Vol.8 1975-79 R.Doc. 203, at 14-18; App.Vol.8 2015-31 R.Doc. 207-2, at 2-18).

Mr. Lyons personally supplied the $3 million Berkley wired to DRE on September 3, 2021 (App.Vol.7 1711 R.Doc. 193, at 4; Tr. 1827). Berkley then had no executed end-buyer contract, no end-buyer funds in escrow, and "zero assets" (App.Vol.9 2392 R.Doc. 227, at 2). On September 28, Mr. Dobi sent DRE an image displaying approximately $1.9 billion in an unaffiliated company's account and later deleted it (App.Vol.9 2393 R.Doc. 227, at 3). Mr. Lyons denied knowing this, and the district court later declined to attribute the image to him (App.Vol.7 1725 R.Doc. 193, at 18; App.Vol.16 3922-23 R.Doc. 346, at 9-10).

The parties disputed their precontract representations (App.Vol.1 68-77 R.Doc. 1, at 9-18; App.Vol.1 205-08, 218-19 R.Doc. 49, at 25-28, 38-39). DRE maintained that Berkley represented it had committed buyers, escrowed funds, and the ability to pay, which Mr. Lyons denied, while Berkley alleged that Mr. Bawany represented that DRE had the facilities, personnel, materials, and financing to fill the order (App.Vol.1 68-77 R.Doc. 1, at 9-18; App.Vol.7 1709-11, 1721-25 R.Doc. 193, at 2-4, 14-18; App.Vol.1 205-08, 218-19 R.Doc. 49, at 25-28, 38-39). The district

court later held that DRE's misrepresentation evidence presented a jury question (App.Vol.9 2324-25, 2331-32 R.Doc. 217, at 5-6, 12-13).

Mahmoud "Michael" Eid was a DRE salesperson who participated in the FIME trade convention, and he testified that at the time of the transaction DRE did not actually have facilities capable of filling an order of this size, DRE planned to import masks from China and box them in California, and DRE needed to increase its capacity (App.Vol.8 1840-41 R.Doc. 198, at 22-23). Ryan Wheeler, a former DRE operations executive who was familiar with its manufacturing operations, testified that DRE's Kansas City plant could not produce the Berkley volume, its California operation remained "very much a work in progress" in mid-October, DRE never manufactured masks there, and Kansas City lacked enough raw materials for the contemplated production (App.Vol.8 1825-26, 1829-30, 1834-36 R.Doc. 198, at 7-8, 11-12, 16-18). In its summary judgment reply, DRE admitted those portions of Mr. Eid's and Mr. Wheeler's testimony were uncontroverted (App.Vol.8 1993, 1996 R.Doc. 207, at 8, 11).

**2. The parties' performance and the breakdown of the transaction**

DRE issued separate invoices for two product streams (Ex. 3; Ex. 4). Invoice 279723 covered ten million packages of imported Chinese masks for $11 million, payable when cargo cleared customs (Ex. 3). Invoice 279722 covered 144 million boxes of blue and black for $184.8

million, payable as cargo became available for pickup, projecting production through March 2022 (Ex. 4). Both referred to inspection, and the boxed-mask invoice required another $3 million deposit after delivery of the first 2.5 million boxes (Ex. 3, at 1; Ex. 4, at 1-2).

Both invoices bore September 10, 2021 dates, and Invoice 279722 stated it was revised September 15 (Ex. 3, at 1; Ex. 4, at 1). Mr. Lyons stated Berkley had not timely received them and DRE had backdated them before the October 19 Addendum (App.Vol.7 1724-25 R.Doc. 193, at 17-18). DRE disputed this, citing September messages attaching both invoices and Berkley's "Undisputed" response to DRE's facts about those transmissions (App.Vol.6 1281-82 R.Doc. 189-2, at 4-5; App.Vol.7 1809 R.Doc. 196, at 6; App.Vol.8 1976 R.Doc. 203, at 15).

DRE began sending bills of lading for the imported masks on September 15 (App.Vol.6 1282-83 R.Doc. 189-2, at 5-6; App.Vol.9 2393 R.Doc. 227, at 3). By September 30, records remained unavailable for the delayed second shipment (App.Vol.6 1282-83 R.Doc. 189-2, at 5-6). Although imported goods cleared customs on October 1, the parties continued to dispute whether all ten million packages had arrived, could be inspected, and were available for pickup (App.Vol.9 2393-94 R.Doc. 227, at 3-4; App.Vol.6 1282-90 R.Doc. 189-2, at 5-13). On October 7, Mr. Bawany identified only 210,000 to 310,000 packages as immediately available (App.Vol.6 1287 R.Doc. 189-2, at 10; App.Vol.9 2394 R.Doc. 227, at 4).

The boxed production had also fallen behind, and the parties addressed both streams of performance in a written “Addendum” to the SPA on October 19 (Ex. 5, at 1-2; App.Vol.9 2394 R.Doc. 227, at 4).

The Addendum stated that product due September 15 had been delayed, referred to “such default by Producer,” and stated DRE “has remained unable to satisfy its obligations under the SPA” (Ex. 5, at 1). Berkley agreed to forbear from terminating, DRE agreed to pay Berkley $1.5 million by October 22, and DRE estimated boxed deliveries would begin by October 31 (Ex. 5, at 1). It also required $150,000 in daily liquidated damages if the $1.5 million remained unpaid, contingent on Berkley’s continued performance (Ex. 5, at 1).

DRE paid only $1 million, leaving $500,000 unpaid and retaining $2 million of Berkley’s deposit (App.Vol.9 2323, 2329-30 R.Doc. 217, at 4, 10-11; Tr. 454-56, 463). DRE maintained that Berkley’s refusal to pay for available product caused a cash shortage that prevented further production (App.Vol.6 1547 R.Doc. 191-11, at 2; App.Vol.6 1549 R.Doc. 191-12, at 2). Berkley maintained that DRE’s admitted default, incomplete documents, deficient inspection, and inability to produce the agreed volume excused further payment (App.Vol.7 1774-76 R.Doc. 194, at 3-5; App.Vol.8 1824-41 R.Doc. 198, at 6-23).

On November 1, DRE demanded $5.4 million for a first boxed shipment, less its unpaid $500,000, without identifying the available quantity, location, or an inspection (App.Vol.7 1748 R.Doc. 193-3, at 2;

App.Vol.6 1509 R.Doc. 191-1, at 4). Berkley responded DRE had not shown readiness and requested the quantity and location (App.Vol.7 1751 R.Doc. 193-4, at 2). By November 5, Berkley had identified some 104,000 boxes and requested a live inspection for a prospective buyer, which DRE refused because it said the site was operating (App.Vol.7 1756 R.Doc. 193-6, at 2; App.Vol.7 1758-59 R.Doc. 193-7, at 2-3).

Meanwhile, the imported masks remained in transit among ports, containers, and warehouses (App.Vol.6 1287-90 R.Doc. 189-2, at 10-13; App.Vol.7 1761 R.Doc. 193-8, at 2). On November 5, Mr. Bawany said cargo was "on its way to a warehouse you can inspect," and on November 8 Berkley reported that product previously described as ready had not reached the Fontana warehouse (App.Vol.6 1290 R.Doc. 189-2, at 13; App.Vol.7 1761 R.Doc. 193-8, at 2). A November 13 video showed several pallets but did not establish the warehouse or total inventory (Ex. 159; App.Vol.9 2394 R.Doc. 227, at 4).

Howard Witkin was a representative of Leviathan Development who inspected product on Berkley's behalf on November 19 (App.Vol.7 1786-87 R.Doc. 195, at 2-3; App.Vol.9 2394-95 R.Doc. 227, at 4-5). Mr. Witkin recorded the outside of trailers and opened brown shipping cases containing individually packaged Chinese masks, and he referred in the recording to "63 containers" and "about 5 million boxes" (Ex. 160; App.Vol.9 2395 R.Doc. 227, at 5). In an affidavit, he later stated that DRE did not allow him inside its warehouse or manufacturing line and

that he could not verify DRE's claimed production capacity (App.Vol.7 1786-87 R.Doc. 195, at 2-3). The recording did not show a manufacturing line or provide a total count of retail boxes (Ex. 160; App.Vol.7 1786-87 R.Doc. 195, at 2-3).

DRE later relied on inspector Donavin Heard's December 7 report to establish availability and acceptance (App.Vol.7 1592, 1597, 1601 R.Doc. 192-6, at 4, 9, 13; App.Vol.9 2323, 2328-30 R.Doc. 217, at 4, 9-11). Mr. Heard accounted for five million 50-count packages in good condition but described them as "unboxed" within larger shipping cases (App.Vol.7 1592, 1597, 1601 R.Doc. 192-6, at 4, 9, 13). Mr. Ortolani also described "bags of masks" from the Chinese vessel, "not the U.S. production" (App.Vol.6 1532, 1536-37 R.Doc. 191-7, at 6, 10-11).

DRE's December 14 demand continued to distinguish imported Chinese masks from manufactured masks, and later communications identified five million packages and only 423,000-800,000 boxes (App.Vol.7 1767-68 R.Doc. 193-10, at 2-3; App.Vol.7 1612 R.Doc. 192-10, at 2; App.Vol.7 1614 R.Doc. 192-11, at 2; App.Vol.6 1518 R.Doc. 191-3, at 2; App.Vol.6 1521 R.Doc. 191-4, at 2; App.Vol.6 1541 R.Doc. 191-8, at 2).

Berkley never paid for or took delivery of the imported or boxed masks, no end buyer paid Berkley for them, and Berkley delivered no product under the one end buyer agreement it ultimately executed (App.Vol.9 2396 R.Doc. 227, at 6).

## B. Proceedings below

### 1. Claims and counterclaims

DRE sued Berkley and Mr. Lyons in January 2022, asserting contract claims under the two invoices and tort claims alleging that Berkley and its representatives misrepresented their buyers, escrow, and ability to complete the purchases (App.Vol.1 60, 68-88 R.Doc. 1, at 1, 9-29; App.Vol.14 3593-94 R.Doc. 345, at 3-4). DRE also pleaded account stated, promissory estoppel, specific performance, and civil conspiracy claims (App.Vol.1 78-88 R.Doc. 1, at 19-29).

Berkley asserted eight counterclaims and third-party claims against DRE and Mr. Bawany (App.Vol.1 214-21 R.Doc. 49, at 34-41). Counts 1 and 2 alleged breach of the SPA and Addendum by non-delivery and DRE withholding $500,000; Counts 3 through 5 asserted implied covenant, alternative unjust enrichment, and declaratory theories (App.Vol.1 214-18 R.Doc. 49, at 34-38). Count 6 alleged fraudulent inducement based on DRE's actual financial, manufacturing, and logistical capacity, Count 7 sought equitable relief over property obtained with Berkley's deposit, and Count 8 sought to impose DRE's obligations on Mr. Bawany (App.Vol.1 218-21 R.Doc. 49, at 38-41).

### 2. Partial summary judgment

DRE moved for partial summary judgment on its invoice and misrepresentation claims and all eight counterclaims (App.Vol.4 864-65 R.Doc. 184, at 1-2; App.Vol.4 876-77 R.Doc. 185, at 1-2). It argued

customs clearance and product availability proved its performance, while Berkley misrepresented buyers, escrow, and finances and could not prove its counterclaims (App.Vol.4 884-910 R.Doc. 185, at 9-35).

Berkley responded that the SPA, invoices, and Addendum had to be read together and viewing the evidence most favorably to it, DRE had not satisfied the agreement's quantity, timing, documentation, availability, and inspection requirements (App.Vol.7 1774-78 R.Doc. 194, at 3-7; App.Vol.7 1807-15 R.Doc. 196, at 4-12). It relied on the Addendum's acknowledgment of DRE's default, the unpaid $500,000, the distinction between imported packages and domestically boxed product, DRE's changing inventory descriptions, and Mr. Wheeler's and Mr. Eid's testimony about DRE's actual capacity (App.Vol.7 1774-82 R.Doc. 194, at 3-11; App.Vol.8 1824-41 R.Doc. 198, at 6-23). It argued that the SPA's limitation-of-liability provision barred DRE's claimed damages, and that the Addendum's liquidated-damages provision entitled Berkley to relief (App.Vol.7 1774-79 R.Doc. 194, at 3-8).

As to its counterclaims, Berkley argued that DRE's retention of Berkley's deposit and failure to make the full payment the Addendum required presented jury questions on Berkley's implied covenant and unjust enrichment counterclaims (App.Vol.7 1776-78 R.Doc. 194, at 5-7). Berkley also argued that disputes concerning DRE's manufacturing capacity, the origin and packaging of the masks, and the inspections supported its fraudulent inducement and constructive trust or equitable

lien claims (App.Vol.7 1780-82 R.Doc. 194, at 9-11). In its response to DRE's statement of facts, Berkley denied that Mr. Lyons or Mr. Dobi had represented that Berkley had received end-buyer funds into escrow or had an escrow-backed contract with Baptist Health (App.Vol.7 1808-09 R.Doc. 196, at 5-6). Berkley did not address declaratory relief or alter ego (App.Vol.7 1776-82 R.Doc. 194, at 5-11).

The district court granted DRE partial summary judgment on contract liability and some damages and dismissed every Berkley counterclaim (App.Vol.9 2320, 2328-37 R.Doc. 217, at 1, 9-18). Though it treated the SPA, invoices, and Addendum as integrated, it disregarded Mr. Lyons's testimony about Section 11(o) and the invoice dates as a "sham" (App.Vol.9 2324-26 R.Doc. 217, at 5-7). But it did not disregard his denials of DRE's alleged buyer and escrow representations and denied DRE summary judgment on misrepresentation (App.Vol.9 2324-25, 2331-32 R.Doc. 217, at 5-6, 12-13).

The court held DRE performed the imported invoice upon customs clearance and the boxed invoice through notices, recordings, and inspections showing availability (App.Vol.9 2328-30 R.Doc. 217, at 9-11). It construed the ten-business-day provision as requiring only a schedule and held DRE's unpaid $500,000 was not a bar because Berkley breached first (App.Vol.9 2329-30 R.Doc. 217, at 10-11). The order did not discuss the admitted capacity testimony from Mr. Wheeler

and Mr. Eid (App.Vol.9 2320-38 R.Doc. 217, at 1-19; App.Vol.8 1824-41 R.Doc. 198, at 6-23; App.Vol.8 1993, 1996 R.Doc. 207, at 8, 11).

The court entered partial summary judgment for DRE and against Berkley for liability on DRE's contract claims (App.Vol.9 2330-31 R.Doc. 217, at 11-12). It entered $11 million for DRE under Invoice 279723 and $5.4 million under Invoice 279722, then credited Berkley with the $2 million net deposit, producing a $14.4 million award (*Id.*).

The court left additional damages for trial because the record did not establish how many more masks DRE had made available under Invoice 279722 or which vendor payments, customs duties, taxes, and fees Berkley was obligated to pay (App.Vol.9 2330-31 R.Doc. 217, at 11-12; App.Vol.14 3594-97 R.Doc. 345, at 4-7).

The court dismissed Berkley's contract counterclaims and held the remaining claims abandoned or deficient (App.Vol.9 2331-37 R.Doc. 217, at 12-18). Among other rulings, it held the economic loss doctrine barred fraudulent inducement, the express agreements barred unjust enrichment, and the evidence did not support equitable or alter ego relief (App.Vol.9 2332-37 R.Doc. 217, at 13-18).

Berkley moved the court to reconsider (App.Vol.10 2493-98 R.Doc. 239, at 1-6), which DRE opposed (App.Vol.10 2657-64 R.Doc. 246, at 1-8) and the court denied (App.Vol.10 2671 R.Doc. 248, at 1).

### 3. Trial and verdict

The case then proceeded to a jury trial over ten days in January 2025 (App.Vol.14 3599-3600 R.Doc. 345, at 9-10). DRE did not pursue its account stated, promissory estoppel, or specific performance claims (App.Vol.14 3594, 3599-3600 R.Doc. 345, at 4, 9-10; App.Vol.11 2900-16 R.Doc. 287, at 26-42).

Due to the partial summary judgment, contract liability was fixed against Berkley at trial, but the jury had to decide whether either breach caused DRE damages and, if so, the amount (App.Vol.11 2900-03 R.Doc. 287, at 26-29). For each invoice, it could award benefit-of-the-bargain damages measured by promised performance less avoided costs or DRE's specified direct costs, and it was directed to find for Berkley if DRE failed to prove causation (*Id.*).

The court did not submit its earlier $14.4 million determination as an established award or minimum (Tr. 31; App.Vol.11 2900-03 R.Doc. 287, at 26-29). It said it was inclined to revise the damages determination and later described its action as "rescinding the damage amount," telling DRE, "do not count on those numbers" (Tr. 31, 1134). DRE's proposed forms allowed damages of "none," and the final instructions required the jury to decide whether DRE sustained any damages (App.Vol.10 2556, 2562 R.Doc. 242, at 52, 58; App.Vol.11 2900-03 R.Doc. 287, at 26-29).

The jury also was to decide liability and damages on DRE's negligent misrepresentation, fraudulent inducement, and fraudulent misrepresentation claims against Berkley and Mr. Lyons separately, and on DRE's civil conspiracy claim against them jointly, including possibly punitive damages (App.Vol.11 2904-16, 2928-31 R.Doc. 287, at 30-42, 54-57).

Instruction 19 directed the jury to disregard the masks' origin, DRE's capacity, the distinction between boxes and bags, freight terms, and claimed inspection rights (App.Vol.11 2898 R.Doc. 287, at 24; Tr. 2160-61). The court also instructed that jurors could believe all, part, or none of any testimony, DRE bore the burden, and jurors must find for Berkley absent proof that either breach caused damages (App.Vol.11 2892, 2897, 2900-03 R.Doc. 287, at 18, 23, 26-29).

DRE's damages expert, accountant Gary Durham, calculated $69,389,025 in out-of-pocket loss, including approximately $62 million in claimed liabilities to vendors JoinWe and UFUN (Tr. 667-80, 713). No vendor had obtained a judgment against DRE, and Mr. Durham relied substantially on DRE's records and demand letters without contacting most vendors (Tr. 689-720). For benefit-of-the-bargain damages, he performed math using the invoices' $195.8 million price and Mr. Bawany's estimate of another $15 million to $20 million in costs but offered no independent opinion on lost profits (Tr. 313, 682-84, 712-13).

DRE also presented vendor payments and mitigation evidence (Ex. 144, at 1; Ex. 151, at 1-12; Tr. 667-720). CrystalWare's admitted purchase order called for a $4.5 million purchase without a repayment condition, but DRE did not introduce a later repayment demand (Ex. 144, at 1; App.Vol.14 3608 R.Doc. 345, at 18).

Berkley did not present a competing expert but cross-examined DRE's witnesses about unadjudicated liabilities, assumptions, and mitigation (Tr. 689-720). In opposing DRE's trial motion for judgment as a matter of law, Berkley argued that the jury could reject Mr. Durham's opinions and that the requested judgment would require forbidden credibility findings (Tr. 2100-01).

During closing argument, the court sustained DRE's objection to Berkley's reliance on a contractual limitation of liability and gave DRE's requested curative instruction, while explaining to the jury that damages "might be zero for other reasons" (Tr. 2240-41). In response, DRE did not make any objection or argue that a zero-damages verdict would be legally inconsistent with the partial summary judgment order or ask the court to remove that option from the verdict forms (Tr. 2240-41). DRE did not ask for a mistrial at any time during trial (App.Vol.14 3610-12 R.Doc. 345, at 20-22).

The jury found for Berkley on whether its breach of either invoice caused DRE damages and therefore left the corresponding dollar lines blank (App.Vol.11 2778-79 R.Doc. 281, at 1-2; Tr. 2315-16). It also

found for Berkley and Mr. Lyons on all four tort claims that reached it (App.Vol.11 2780-83 R.Doc. 281, at 3-6; Tr. 2315-17). After reading the verdicts and polling the jurors, the court found that the forms did not conflict and asked DRE whether it had anything further before the jury was discharged (Tr. 2317-18). DRE answered, "No, Your Honor," and again identified no issue after the jurors left (Tr. 2318-19).

The clerk then entered judgment for Berkley and Mr. Lyons on all claims tried to the jury (App.Vol.11 2932 R.Doc. 291, at 1). The judgment did not include any amount for DRE, such as the $14.4 million the court identified at summary judgment (*Id.*; App.Vol.11 2778-79 R.Doc. 281, at 1-2).

**4. Post-trial proceedings**

DRE renewed its motion for judgment as a matter of law and alternatively sought a new trial and amended judgment (App.Vol.12 3000-06 R.Doc. 308, at 1-7; App.Vol.12 3007-10 R.Doc. 309, at 1-4). It argued that zero contract damages conflicted with the summary judgment and Missouri law, its proof compelled $169,928,171 in benefit-of-the-bargain damages or its out-of-pocket loss, and the verdict was against the weight of the evidence (App.Vol.12 3010-27 R.Doc. 309, at 4-21).

DRE also sought new contract and tort trials based on 185 alleged instances of attorney misconduct and moved separately for sanctions against Berkley, Mr. Lyons, and their trial counsel (App.Vol.12 3013,

3027-50 R.Doc. 309, at 7, 21-44; App.Vol.11 2935-37 R.Doc. 298, at 1-3). It requested the court to add the $14.4 million summary judgment amount to the judgment (App.Vol.12 3050 R.Doc. 309, at 44).

Berkley responded that DRE had accepted the causation questions and zero damages option in the instructions and verdict forms and failed to object when the verdict was returned, and so waived any contention that the verdict was inconsistent (App.Vol.13 3321-24 R.Doc. 335, at 1-4; App.Vol.13 3335-40 R.Doc. 336, at 7-12). It also argued that DRE retained the burden of proving damages, a party need not present a competing expert to challenge its opponent's proof, and the jury could reject DRE's witnesses and calculations after cross-examination (App.Vol.13 3340-45 R.Doc. 336, at 12-17). Berkley opposed a new tort trial because the court had found the verdict forms consistent, had addressed DRE's objections and requests for curative relief during trial, and had received no request for a mistrial (App.Vol.13 3344-58 R.Doc. 336, at 16-30). The defendants and their counsel opposed sanctions on the ground that their conduct reflected good faith and zealous advocacy and did not satisfy the standards governing the court's inherent authority or § 1927 (App.Vol.14 3642-43 R.Doc. 345, at 52-53).

DRE separately moved to pierce Berkley's veil based on Mr. Lyons's ownership and control, Berkley's lack of employees and independent assets, its use of his funds, and the proof-of-funds representations (App.Vol.12 2986-87 R.Doc. 306, at 1-2; App.Vol.12

2992-97 R.Doc. 307, at 3-8). Berkley and Mr. Lyons responded that ownership and capitalization did not establish misuse, the jury had rejected DRE's fraud theories, and Mr. Dobi's proof-of-funds transmission could not be attributed to Mr. Lyons without evidence of his knowledge (App.Vol.13 3316-18 R.Doc. 334, at 2-4).

In March 2026, a year after the post-trial briefing, the district court entered a 99-page order granting DRE judgment as a matter of law for $165,428,171 on the two contract claims (App.Vol.14 3591, 3605-10 R.Doc. 345, at 1, 15-20). It held the contract verdict was inconsistent with its summary judgment ruling and the availability of nominal damages, and concluded no reasonable jury could reject DRE's benefit-of-the-bargain calculation (App.Vol.14 3602-10 R.Doc. 345, at 12-20). The court said it had not intended to vacate the $14.4 million award, despite describing it during trial as rescinded, because it had withheld the amount from the jury to avoid confusion and duplication (Tr. 1134; App.Vol.14 3640 R.Doc. 345, at 50).

The court began with $195.8 million in invoice prices, selected the $20 million endpoint of Mr. Bawany's additional-cost estimate, credited $8,371,829 in mitigation, and deducted Berkley's $2 million net deposit (App.Vol.14 3605-10 R.Doc. 345, at 15-20). It treated CrystalWare's $4.5 million payment as mitigation because the jury could disbelieve Mr. Bawany's asserted repayment condition, and it subsumed the $14.4

million determination in the larger award (App.Vol.14 3607-08, 3640-41 R.Doc. 345, at 17-18, 50-51).

The court conditionally granted a new contract-damages trial if the judgment as a matter of law were reversed (App.Vol.14 3610-18 R.Doc. 345, at 20-28). It held the zero-damages verdict was against the weight of the evidence and "shockingly inadequate," credited Mr. Durham, and found Berkley's cross-examination insufficient to reject DRE's damages proof (App.Vol.14 3610-17 R.Doc. 345, at 20-27).

The court incorporated into that ruling the attorney-conduct and evidentiary grounds on which it granted DRE a new tort trial (App.Vol.14 3617 R.Doc. 345, at 27 n.26). It acknowledged that more than half of DRE's 185 alleged instances of misconduct had occurred outside the jury's presence and relied only on conduct before the jury (App.Vol.14 3620-21, 3688 R.Doc. 345, at 30-31 & n.29, 98 n.105). Although it held the tort verdict was not against the weight of the evidence because credibility and reliance remained disputed, it ordered a new trial based on counsel's statements and evidentiary rulings (App.Vol.14 3618-20, 3638-40 R.Doc. 345, at 28-30, 48-50).

The court separately considered DRE's sanctions request based on conduct throughout the trial, including matters outside the jury's presence that did not support its Rule 59 ruling (App.Vol.14 3642-88 R.Doc. 345, at 52-98 & n.105). It denied sanctions against Berkley, Mr. Lyons, and the defendants' other trial attorney but granted them

against lead counsel Stuart Kaplan (App.Vol.14 3644-45, 3687-89 R.Doc. 345, at 54-55, 97-99).

In a separate order, the court imposed Berkley's judgment on Mr. Lyons even though Counts II and V, the contract claims on which DRE obtained judgment, sought relief only from Berkley, and Berkley had objected that DRE pleaded no veil-piercing theory (App.Vol.1 76-77, 79-80 R.Doc. 1, at 17-18, 20-21; Tr. 39-42, 1692-93). The court inferred consent from Berkley's defensive proposed instruction and its failure to repeat the objection in its post-trial opposition (App.Vol.16 3916-18 R.Doc. 346, at 3-5). It then relied on Mr. Lyons's ownership and funding and Berkley's lack of employees and independent assets (App.Vol.16 3918-20 R.Doc. 346, at 5-7). Although it recognized an inference that Mr. Lyons had not undercapitalized Berkley to evade DRE and declined to attribute Mr. Dobi's proof-of-funds image to him, it held undercapitalization established wrongdoing and inability to pay established causation (App.Vol.16 3920-24 R.Doc. 346, at 7-11).

The district court certified the $165,428,171 contract judgment and veil-piercing order under Fed. R. Civ. P. 54(b) while the tort claims remained pending, and later added $66,692,480.45 in prejudgment interest (App.Vol.17 4279-80 R.Doc. 374, at 1-2; App.Vol.17 4301-04 R.Doc. 391, at 9-12). Berkley and Mr. Lyons timely appealed to this Court (App.Vol.17 4231 R.Doc. 362, at 1; App.Vol.17 4305 R.Doc. 398, at 1).

## Summary of the Argument

Fourteen months after a unanimous defense verdict, the district court entered a $232 million judgment, conditionally ordered a new contract-damages trial, unconditionally ordered a new trial on DRE's tort claims, preserved its pretrial liability rulings, and imposed the judgment personally on Mr. Lyons.

First, Rule 50 required the court to respect the jury's credibility determinations. DRE bore the burden of proving damages, and its calculation depended on its owner's unsupported estimate of avoided costs and an expert who offered no independent lost-profits opinion. The jury could reject that proof without a competing expert. Neither the rescinded $14.4 million summary judgment determination nor nominal damages established the court's $165 million award.

Second, DRE waived any claim that the verdict was inconsistent by proposing forms allowing no damages and failing to object before the jury was discharged. It also accepted curative instructions and never requested a mistrial. The remaining new trial ground merely substituted the court's assessment of DRE's witnesses for the jury's. The Court should reinstate the original judgment.

Third, if a new trial is necessary, this Court should reverse the pretrial partial summary judgment. Viewed most favorably to Berkley, DRE breached first by failing timely to deliver satisfactory product, supply required documentation, make the full quantity available for

inspection, and pay the Addendum's remaining $500,000. This same evidence also allowed a jury to find that DRE fraudulently induced Berkley by misrepresenting its existing facilities, materials, and production capacity. Liability on both sides' claims belongs to a jury.

Fourth, DRE never pleaded Mr. Lyons's personal liability on its contract claims, and Berkley expressly objected to the court considering this while the court confirmed that Berkley did not waive that objection. Berkley's defensive proposed instruction did not establish implied consent. On the merits, Berkley's lack of fixed assets and inability to satisfy the judgment did not establish wrongful use of control or causation under Missouri law.

Finally, any further proceedings should be reassigned to a different district judge. The district court has already made sweeping categorical findings rejecting the jury's verdict, Berkley's defenses, Mr. Lyons's credibility, and former counsel's good faith. Because remand would require reconsideration of those same issues, the appearance of impartial justice requires a different judge.

# <u>Argument</u>

## I. The district court erred by replacing the jury's unanimous defense verdict with a $232 million judgment.

*Standard of Appellate Review*

This Court reviews a Fed. R. Civ. P. 50(b) ruling *de novo* under the standards governing the district court. *Am. Bank of St. Paul v. TD Bank, N.A.*, 713 F.3d 455, 462 (8th Cir. 2013). Judgment lies only when, after drawing every reasonable inference for the nonmovant and not weighing evidence or deciding credibility, no reasonable juror could find for the nonmovant. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000); *Foster v. Time Warner Entm't Co.*, 250 F.3d 1189, 1194 (8th Cir. 2001).

The Court must disregard evidence favorable to the movant that the jury was not required to believe, resolve conflicts for the nonmovant, assume the facts its evidence tended to prove, and deny judgment if reasonable jurors could differ. *Reeves*, 530 U.S. at 151; *Stults v. Am. Pop Corn Co.*, 815 F.3d 409, 418 (8th Cir. 2016).

*   *   *

### A. Summary

Rule 50 allows judgment for the party bearing the burden of proof only when evidence the jury was not free to disbelieve compels one result. DRE's $165,428,171 calculation depended on its owner's unitemized estimate of $15 million to $20 million in avoided costs, while

its expert disclaimed an independent opinion about lost profits. The district court nonetheless credited the estimate and supplied findings the jury declined to make. This misapplied Rule 50.

The jury was instructed to decide whether either breach caused DRE damages and the amount proven with reasonable certainty, and it found for Berkley on both questions (Tr. 2162-64; App.Vol.11 2778-79 R.Doc. 281, at 1-2). The court then began with $195.8 million in invoice revenue, selected $20 million in avoided costs, credited $8,371,829 in mitigation and Berkley's $2 million deposit, and entered $165,428,171 (App.Vol.14 3605-09 R.Doc. 345, at 15-19). That calculation required factual and credibility findings Rule 50 reserved for the jury.

**B. Rule 50 required the court to view the evidence and draw reasonable inferences for Berkley, not weigh credibility.**

Fed. R. Civ. P. 50 allows judgment only when "all the evidence points one way" and no reasonable inference supports the nonmovant. *Hortica-Florists' Mut. Ins. Co. v. Pittman Nursery Corp.*, 729 F.3d 846, 854 (8th Cir. 2013). The court must disregard evidence favorable to the movant that the jury could disbelieve, crediting uncontradicted evidence only from disinterested witnesses. *Reeves*, 530 U.S. at 151. Mr. Bawany owned and led DRE, which depended on his testimony to establish recovery (Tr. 427; App.Vol.12 3046 R.Doc. 309, at 40).

Even an interested witness's uncontradicted testimony remains subject to the factfinder's assessment. *Sartor v. Ark. Nat. Gas Corp.*,

321 U.S. 620, 627-29 (1944). Hence, Instruction 13 allowed the jury to believe all, part, or none of any testimony and consider each witness's interest and reasonableness (App.Vol.11 2892 R.Doc. 287, at 18).

Here, DRE bore the burden of proving the existence and amount of damages with reasonable certainty. *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 864-65 (8th Cir. 2010). So, Berkley did not need either to disprove damages or establish a different amount. A court commits reversible error by granting judgment for a burden-bearing plaintiff merely because the opponent produced no contrary evidence, because that reasoning both shifts the burden and resolves credibility. *United States v. Landau*, 155 F.3d 93, 102-03 (2d Cir. 1998).

In *Vetter v. Farmland Indus., Inc.*, the district court replaced a defense verdict with judgment for the burden-bearing plaintiff because it concluded that all the evidence established sincerity. 120 F.3d 749, 752-53 (8th Cir. 1997). This Court reversed because the evidence allowed the jury to infer personal preference. *Id.*

Similarly, the Supreme Court reversed judgment based on eight valuation witnesses, several interested, because opinion testimony had no conclusive force and the jury could reject even uncontradicted testimony. *Sartor,* 321 U.S. at 624, 627-29. The Rule 56 evidentiary standard applied in *Sartor* mirrors Rule 50. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250-52 (1986).

This Court in *Madden v. Lumber One Home Ctr., Inc.*, 745 F.3d 899, 903 (8th Cir. 2014), drew the same line within one decision, affirming the Rule 50 judgment where the burden-bearing employer offered no proof but reinstating the employer's verdict where one witness supplied supporting evidence. *Id.*; *see also Willis v. State Farm Fire & Cas. Co.*, 219 F.3d 715, 717, 720-21 (8th Cir. 2000) (reinstating insurer's verdict because jury could reject its uncontradicted testimony).

Many courts have applied this to reverse post-verdict judgments for burden-bearing parties. *See, e.g.*, *Martin v. Moscowitz*, 272 F. App'x 44, 45-47 (2d Cir. 2008); *Connelly v. Cnty. of Rockland*, 61 F.4th 322, 325-27 (2d Cir. 2023); *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 624-25 (5th Cir. 2008); *Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477, 485-86 (7th Cir. 2000); *Medtronic, Inc. v. Roadway Express, Inc.*, 10 F. App'x 431, 433 (9th Cir. 2001); *Fisher v. City of San Jose*, 558 F.3d 1069, 1084-85 (9th Cir. 2009); *Dees v. Cnty. of San Diego*, 960 F.3d 1145, 1153-54 (9th Cir. 2020); *Murphy Oil USA, Inc. v. Wood*, 438 F.3d 1008, 1016-18 (10th Cir. 2006).

Accordingly, judgment for the party bearing the burden is proper only in the "extreme" case where evidence not subject to disbelief allows one conclusion. *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1375 (Fed. Cir. 2001). DRE needed evidence the jury was not free to reject, not merely evidence from which it could award damages.

### C. DRE bore the burden of proving damages, and the jury could reject its witnesses and calculations without a competing damages expert.

DRE's benefit of the bargain was the invoices' value minus costs it avoided through nonperformance (Tr. 2162-64; App.Vol.11 2900-03 R.Doc. 287, at 26-29). The $195.8 million price therefore established gross revenue, not net profit. The law of Missouri requires a claimant seeking an unpaid price as lost profit to prove the direct costs it would have incurred to complete performance; otherwise, awarding the balance creates a windfall. *Forney v. Mo. Bridge & Concrete, Inc.*, 112 S.W.3d 471, 474-75 (Mo. Ct. App. 2003).

The district court could reach $165,428,171 only by treating $20 million as the maximum DRE would have spent to complete, package, ship, and deliver the masks (App.Vol.14 3605-09 R.Doc. 345, at 15-19). But that depended on credibility and weight, not the stipulated totals.

Mr. Bawany identified freight, rent, labor, engineering, and quality-control costs, first estimating "another $20 million" and then "about another 15 to $20 million" (Tr. 312-13). He supplied no itemization, allocation, or method producing either endpoint (App.Vol.12 3022-23 R.Doc. 309, at 16-17). DRE's expert, Mr. Durham, did not validate that estimate, instead disclaiming an independent opinion and explaining only his general calculation (Tr. 682-83, 712-13). DRE acknowledged that "Bawany's credibility was paramount" to this "key component" (App.Vol.12 3046 R.Doc. 309, at 40).

Despite this, the district court selected $20 million because that endpoint produced the lowest award within Mr. Bawany's range (App.Vol.14 3606-07 R.Doc. 345, at 16-17). Choosing the endpoint most favorable to Berkley did not make the range conclusive. The jury remained free to find the whole interested, unitemized estimate unpersuasive or incomplete.

The court emphasized that Berkley did not offer any competing proof and did not cross-examine Mr. Bawany about this estimate (App.Vol.14 3606 R.Doc. 345, at 16). Neither of these shifted DRE's burden. The jury could reject Mr. Durham's opinions and Mr. Bawany's testimony, and Rule 50 did not require Berkley to sponsor another model. *DiCarlo v. Keller Ladders, Inc.*, 211 F.3d 465, 468 (8th Cir. 2000); *Forney*, 112 S.W.3d at 474-75. Berkley's burden to prove a failure to mitigate did not displace DRE's threshold burden to prove with reasonable certainty the gross damages and avoided costs necessary to calculate net expectancy, which the district court itself recognized (App.Vol.14 3606 R.Doc. 345, at 16).

The court's treatment of CrystalWare shows the inconsistency. Mr. Bawany said DRE had to repay CrystalWare's $4.5 million, but DRE introduced no demand (Tr. 310, 681). The court concluded the jury could disbelieve him and credited the payment as mitigation (App.Vol.14 3607-08 R.Doc. 345, at 17-18). Rule 50 gave the jury the same authority over his estimate of other costs. *Willis*, 219 F.3d at 720.

The authorities DRE invoked only establish that owner testimony can support an award if the factfinder credits it. After bench trials, the courts in *Williams Constr., Inc. v. Wehr Constr., L.L.C.*, 403 S.W.3d 660, 662, 666-67 (Mo. Ct. App. 2012), and *Gateway Foam Insulators, Inc. v. Jokerst Paving & Contracting, Inc.*, 279 S.W.3d 179, 183-84, 186-87 (Mo. 2009), deferred to factfinders that credited owner or accountant testimony. The court in *Williams* emphasized that the factfinder could believe none, part, or all of the owner's testimony. 403 S.W.3d at 667. But evidence sufficient to allow damages does not compel them.

The other authorities that DRE and the district court cited do not make DRE's proof conclusive, either.

In *Serv. Auto Supply Co. of P.R. v. Harte & Co., Inc.*, 533 F.2d 23, 25-28 (1st Cir. 1976), the First Circuit affirmed judgment for the burden-bearing party on liability because the defense witness corroborated the plaintiff's proof, but remanded mitigation because that witness created a factual question about remaining value. Here, the invoice totals established gross revenue, not the costs necessary to calculate DRE's alleged net expectancy.

*In re RFC & ResCap Liquidating Tr. Action* involved unequivocal, unimpeached expert testimony on a technical bankruptcy question corroborated by multiple professionals and a judge. 399 F. Supp. 3d 804, 818-19 (D. Minn. 2019) (cited at App.Vol.14 3609 R.Doc. 345, at 19

n.19). Here, DRE relied on an interested owner's unitemized estimate, and its expert disclaimed an independent opinion (Tr. 312-13, 712-13).

DRE's alternative out-of-pocket model equally could not support the district court's judgment. Mr. Durham's $69,389,025 calculation included some $62 million from two vendors, though he knew of no judgment or lawsuit establishing either demand, had not spoken to most included vendors, and could not recall reviewing DRE's tax returns or balance sheets (Tr. 689-92, 702, 705, 713, 719). The court found him credible only while weighing evidence under Rule 59, authority unavailable under Rule 50 (App.Vol.14 3614-17 R.Doc. 345, at 24-27). DRE's model neither compelled damages nor approached $165,428,171.

### D. Neither the rescinded $14.4 million partial-summary-judgment determination nor the availability of nominal damages authorized a $165 million judgment.

At the outset, the district court rescinded the $14.4 million determination before the verdict. Its partial summary judgment had identified that amount based on $11 million under the smaller invoice, $5.4 million in masks it found available under the larger invoice, and the $2 million net deposit (App.Vol.9 2330-31 R.Doc. 217, at 11-12).

But at the beginning of trial, the court announced it was "inclined to revise" the summary judgment "to the extent that I speak to damage amount and leave that damage amount open" because "so many things"

remained "in play" (Tr. 31). It then removed its damages-amount ruling from the jury trial (Tr. 43-44). When the subject arose again, the court eliminated any ambiguity: its "rationale" had been "rescinding the damage amount that I had in the dispositive motion," and it told DRE, "do not count on those numbers because there's other things that go into consideration" (Tr. 1134).

Fed. R. Civ. P. 54(b) allowed revision at any time. *Langford v. Norris*, 614 F.3d 445, 456 (8th Cir. 2010). While the court later said no revision occurred because none was in writing (App.Vol.14 3640-41 R.Doc. 345, at 50-51), Fed. R. Civ. P. 56(a) only requires reasons "on the record," which the court gave (Tr. 31, 1134). Its intervening statement that the liability decision "stands" did not address damages (Tr. 1033).

The ensuing proceedings confirm that the court rescinded its pretrial summary judgment damages. The final instructions submitted whether Berkley's breaches caused DRE *any* damages and directed the jury to award *only* the amount it found DRE proved (App.Vol.11 2899-02 R.Doc. 287, at 25-28). The verdict forms allowed the jury to find for Berkley on causation and required damages only if it first found for DRE, and the jury found for Berkley on both contract claims (App.Vol.11 2778-79 R.Doc. 281, at 1-2). The resulting judgment stated the jury found for Berkley "on all claims" and included no $14.4 million award (App.Vol.11 2932 R.Doc. 291, at 1). Accordingly, DRE asked the court to amend that judgment to add the omitted amount (App.Vol.12

3050 R.Doc. 309, at 44). The court itself ultimately said that its interlocutory summary judgment merged into the Rule 50 judgment it entered (App.Vol.14 3641 R.Doc. 345, at 51). So, there was no surviving $14.4 million determination with which the jury's verdict could conflict.

Regardless, the interlocutory determination did not adjudicate avoided costs, mitigation, or other inputs necessary for $165,428,171. The summary judgment expressly denied "any other damages" and left them for trial (App.Vol.9 2331, 2338 R.Doc. 217, at 12, 19).

Nominal damages do not fill those gaps, either.[1] A plaintiff establishing breach may recover nominal damages but cannot obtain more without evidence of actual, substantial loss. *In re Luebbert*, 987 F.3d 771, 779 (8th Cir. 2021); *Duncan v. Kelly*, 435 S.W.2d 29, 34 (Mo. Ct. App. 1968). That rule cannot establish $20 million in avoided costs or another component of this award.

Nor does the inconsistency the district court perceived between the verdict, the partial summary judgment, and nominal damages substitute for proof under Rule 50. The displaced finding must independently lack a sufficient evidentiary basis. *Mycogen Plant Sci. v. Monsanto Co.*, 243 F.3d 1316, 1325-26 (Fed. Cir. 2001). The court could reach that conclusion only by crediting Mr. Bawany, treating his range as exhaustive, and shifting DRE's burden.

[1] Issue II explains why DRE waived nominal damages.

The Seventh Amendment's civil jury guarantee reinforces that the district court misapplied the law. When damages are in dispute, both parties retain the right to a jury determination, and the court may not add an amount omitted from the verdict or substitute its estimate. *Dimick v. Schiedt,* 293 U.S. 474, 486-87 (1935); *Kennon v. Gilmer,* 131 U.S. 22, 29-30 (1889). Rule 50 did not compel every component of $165,428,171.

The Court should reverse the Rule 50 judgment and vacate both the $165,428,171 award and the $66,692,480 in prejudgment interest dependent on it. As Berkley and Mr. Lyons explain in Issue II, the Court should reinstate the original judgment.

## II. The district court erred in ordering a new trial.

*Standard of Appellate Review*

This Court reviews a new-trial order for abuse of discretion but corrects legal errors *de novo*. *Hiser v. XTO Energy, Inc.*, 768 F.3d 773, 776 (8th Cir. 2014); *Geier v. Mo. Ethics Comm'n,* 715 F.3d 674, 678 (8th Cir. 2013).

* * *

### A. Summary

A party must object before the jury is discharged if it considers a verdict legally inconsistent, and Rules 59 and 61 do not allow retrial for cured incidents or rulings that did not affect substantial rights. DRE proposed verdict forms allowing no damages, accepted the instructions, remained silent when the verdict was returned, received curative instructions, and never requested a mistrial. The court nonetheless ordered a conditional retrial on DRE's contract claims after crediting DRE's witnesses and incorporating attorney-conduct and evidentiary grounds supporting its unconditional tort retrial. This was error.

The district court's conditional new trial ruling on DRE's contract claims rested on its view that zero damages was against the weight of the evidence and "shockingly inadequate," plus the attorney-conduct and evidentiary grounds it separately used to order a new trial on

Counts 6 through 9 (App.Vol.14 3610-19 R.Doc. 345, at 20-29 & n.26).[2] Neither component survives review.

### B. DRE waived its contention that the zero-damages verdict on its contract claims was legally inconsistent.

A party claiming inconsistency in a jury verdict must object and request resubmission before the jury is discharged, allowing that jury to eliminate the problem. Silence waives a later new trial request. *Lockard v. Mo. Pac. R.R. Co.*, 894 F.2d 299, 304-05 (8th Cir. 1990). In *Miller v. Albright*, 657 F.3d 733, 735-39 (8th Cir. 2011), this Court enforced that rule when a party proposed the instructions and form, did not object, and sought nominal damages only after the jury wrote "none."

Here, DRE's proposed verdict forms expressly allowed "none" for benefit-of-the-bargain or out-of-pocket damages (App.Vol.10 2555-56, 2561-62 R.Doc. 242, at 51-52, 57-58). It accepted final forms presenting that choice and remained silent when the court said damages "might be zero for other reasons" (Tr. 2184-85, 2241; App.Vol.11 2900-03 R.Doc. 287, at 26-29).

---

[2] The district court found the tort verdict was not against the weight of the evidence and ordered a new trial on Counts 6-9 only on the misconduct and evidentiary grounds incorporated into the conditional contract ruling (App.Vol.14 3617, 3618-40 R.Doc. 345, at 27 n.26, 28-50). If this Court rejects those grounds, that should govern the uncertified tort new trial order on remand.

The forms asked whether each breach "caused DRE damages," and the jury found for Berkley (App.Vol.11 2778-79 R.Doc. 281, at 1-2; Tr. 2315-16). The court found the verdicts "nonconflicting" and asked whether DRE had anything further before discharge, to which DRE answered, "No, Your Honor" (Tr. 2317-18). An objection could have clarified whether the jury found no causation, no proven amount, or another failure of proof. DRE's silence foreclosed that remedy.

Although DRE could challenge the verdict's weight, its unpreserved legal attack cannot support retrial. In *Warren v. Fanning*, this Court rejected nominal damages where the plaintiff proposed and accepted an instruction allowing no damages, and Rule 51 bars an unpreserved challenge to the instructions' text. 950 F.2d 1370, 1374 (8th Cir. 1991); *Pulla v. Amoco Oil Co.*, 72 F.3d 648, 654-57 & n.13 (8th Cir. 1995).

### C. DRE cannot transform corrected incidents into incurable prejudice when it never sought a mistrial.

A timely, specific objection may preserve improper argument without a separate mistrial motion, but it does not turn later, different incidents into a cumulative claim. *Harrison v. Purdy Bros. Trucking Co.*, 312 F.3d 346, 353-54 (8th Cir. 2002); *Salt Lake City v. Smith*, 104 F. 457, 470 (8th Cir. 1900). Here, the court sustained objections, stopped questioning, and gave corrections (Tr. 399, 592; App.Vol.11 2898 R.Doc. 287, at 24).

DRE never argued that the jury had become incapable of deciding the case fairly or asked the court to end the trial (App.Vol.14 3610-12 R.Doc. 345, at 20-22; App.Vol.13 3344-58 R.Doc. 336, at 16-30). It sought and received corrective action, continued to verdict, and raised nothing when invited before discharge (Tr. 2317-18). In *Harrison*, this Court confirmed that an immediate cautionary instruction directing the jury that argument was not evidence cured any prejudice. 312 F.3d at 353-54. Nor did the separate sanction against Mr. Kaplan establish prejudice requiring a new trial against Berkley, particularly when the court denied sanctions against Berkley, Mr. Lyons, and other counsel (App.Vol.14 3683-89 R.Doc. 345, at 93-99).

### D. The misconduct and evidentiary rulings DRE raised did not affect its substantial rights.

Fed. R. Civ. P. 61 requires courts to disregard error that does not affect substantial rights. Improper argument warrants retrial only when "plainly unwarranted and clearly injurious," while an evidentiary ruling must make a different result likely or have more than a slight influence. *Harrison*, 312 F.3d at 351-52; *Am. Bank of St. Paul*, 713 F.3d at 464. Calling conduct pervasive or sanctionable does not establish that causal connection.

Here, the court addressed the incidents DRE identified as they occurred. It instructed that no claim against DRE remained and Berkley's post-Addendum breach had been determined, it stopped

examination to read the stipulation about the SPA, and it told jurors that the suggestion about a deleted message lacked support, counsel was mistaken, and his mistake could not be attributed to Berkley or Mr. Lyons (Tr. 92-93, 399, 592). Instruction 19 then removed product origin, packaging, capacity, freight terms, and inspection from deliberations (App.Vol.11 2898 R.Doc. 287, at 24; Tr. 2160-61). Jurors are presumed to follow these directions. *Farrington v. Smith*, 707 F.3d 963, 969-72 (8th Cir. 2013). Nothing here shows they did not.

The court relied on earlier juror questions and the defense verdict "across the board," but the questions preceded Instruction 19 and the court itself found that the tort verdict was not against the weight of the evidence because representations, credibility, and reliance were disputed (App.Vol.14 3618-19, 3637-38 R.Doc. 345, at 28-29, 47-48; Tr. 630, 1893, 2160-61). DRE's loss on disputed issues did not overcome the presumption that jurors followed the instructions.

The evidentiary analysis had the same defect. The court said "in hindsight" that it admitted irrelevant evidence about origin, packaging, production, and capacity, though those subjects bore on fraud and the parties' understandings and Instruction 19 removed them from consideration (App.Vol.14 3631-32, 3638-39 R.Doc. 345, at 41-42, 48-49; App.Vol.11 2898 R.Doc. 287, at 24). The court connected none of those rulings to an element or verdict answer. It also supplied a new theory that relevant Carlin Capital evidence "may have been" excluded,

without identifying a ruling or offer of proof (App.Vol.14 3639 R.Doc. 345, at 49 n.47). Rule 59(d) required notice and an opportunity to be heard before granting relief on a ground DRE did not state. *Copper v. City of Fargo,* 184 F.3d 994, 997-98 (8th Cir. 1999).

The court also used post-trial juror questionnaires to support prejudice (App.Vol.14 3634, 3639 R.Doc. 345, at 44 n.40, 49 n.48). But Fed. R. Evid. 606(b) bars juror accounts of deliberations or mental processes absent outside information, outside influence, or an error in recording the verdict, none of which applies here. *Warger v. Shauers*, 574 U.S. 40, 42-50 (2014).

**E. The contract verdict was not against the weight of the evidence.**

Rule 59 allows some weighing of evidence and credibility, but a different judicial assessment does not suffice; the verdict must be so contrary to the evidence that allowing it to stand would cause injustice. *White v. Pence*, 961 F.2d 776, 780-82 (8th Cir. 1992); *Butler v. French*, 83 F.3d 942, 944-45 (8th Cir. 1996). As a result, this Court has reversed new trial orders where reasonable people could draw different inferences and directed judgment on the verdict. *See Fireman's Fund Ins. Co. v. Aalco Wrecking Co.*, 466 F.2d 179, 186-88 (8th Cir. 1972); *Blake v. J.C. Penney Co.*, 894 F.2d 274, 281-82 (8th Cir. 1990).

Here, the court credited Mr. Durham, called DRE's presentation "uncontroverted," and found Berkley's cross-examination insufficient,

emphasizing the absence of a rebuttal expert (App.Vol.14 3610-17 R.Doc. 345, at 20-27). But DRE bore the burden, and Berkley could expose deficiencies without proving a different figure. Mr. Bawany supplied only an unitemized $15 million to $20 million estimate, Mr. Durham disclaimed an independent lost-profits opinion, and DRE did not document the CrystalWare repayment condition (Tr. 312-13, 681, 683-84, 709-13). Even the court rejected DRE's account of the CrystalWare damages (App.Vol.14 3608 R.Doc. 345, at 18).

DRE's proof depended on estimates from interested witnesses, asserted vendor liabilities, and disputed mitigation. The jury could assess that proof and write "none." *Riordan v. Corp. of Presiding Bishop*, 416 F.3d 825, 833-34 (8th Cir. 2005). The court itself found the same jury properly resolved disputed credibility and reliance against DRE on the tort claims (App.Vol.14 3618-19 R.Doc. 345, at 28-29). Its preference for DRE's damages witnesses did not make the contract verdict a miscarriage of justice.

This Court should reverse the conditional new trial ruling and, after vacating the Rule 50 judgment under Issue I, direct reinstatement of the original judgment on Counts 2 and 5.

## III. The district court erred in granting DRE partial summary judgment on liability for its contract claims and on Berkley's counterclaims.[3]

*Standard of Appellate Review*

This Court reviews a summary judgment *de novo*, viewing the record and drawing every reasonable inference for the nonmovant without deciding credibility or weighing evidence. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc); *Anderson*, 477 U.S. at 255. Judgment is proper only if the record as a whole could not lead a rational factfinder to rule for the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

* * *

The law of Missouri requires courts to read an integrated contract as a whole, give effect to its conditions, and leave material breach to the factfinder. Viewed most favorably to Berkley, a jury could find DRE breached first by failing to make timely satisfactory delivery, provide required documentation, make the full quantity available for successful inspection, deliver the invoiced boxed product, and pay the Addendum's remaining $500,000. A jury also could find that DRE induced Berkley to contract by representing existing facilities, materials, personnel, and production capacity it did not possess. The district court instead

[3] This issue is an alternative to Issue II. If the Court disagrees with Berkley and holds that a new trial is required on the contract claims, the Court should reverse the partial summary judgment so the jury can decide contract liability and Berkley's counterclaims, too.

treated customs clearance and an unsupported demand letter as conclusive performance, excused DRE's breaches by assuming Berkley's breach, and conflated existing capacity with future performance. It thereby prevented a jury from deciding DRE's contract claims and Berkley's counterclaims. This was error.

### A. Viewed most favorably to Berkley, DRE breached first and the parties' contract claims required trial.

To prove its contract claims, DRE had to prove performance or tendered performance. *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. 2010). The integrated SPA, invoices, and Addendum had to be read together, and a party that materially breached first could not claim the agreement's benefits. *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428-29, 435 n.5 (Mo. 2003); *Guidry v. Charter Comm'cns, Inc.*, 269 S.W.3d 520, 531-32 (Mo. Ct. App. 2008).

The SPA's Section 3(d) required satisfactory delivery of five million boxes within ten business days after the deposit, Section 4 identified the same estimated date, and Section 5(b) conditioned another deposit on successful delivery of five million boxes (Ex. 1, at 4-6). Instead of applying these provisions, the court treated Section 2(a)'s estimated-schedule requirement as the only obligation, leaving the specific delivery provisions without effect (App.Vol.9 2328-29 R.Doc. 217, at 9-10). *Dunn*, 112 S.W.3d at 428-29.

Customs clearance and a bare assertion of availability did not satisfy every condition. Sections 3(e), 3(f), and 4 also required successful inspection, packing and commercial documents, and compliance with other provisions, while both invoices stated "INSPECTION INCLUDED" (Ex. 1, at 5-6; Ex. 3, at 1; Ex. 4, at 2). Section 11(o) displaced SPA terms only if they conflicted, and the court identified no conflict eliminating these conditions (Ex. 1, at 10; App.Vol.9 2328-30 R.Doc. 217, at 9-11).

Mr. Lyons also disputed Section 11(o)'s presence and the invoices' dates, but reversing the district court's summary judgment order does not require resolving the court's rejection of his affidavit (App.Vol.7 1723-24 R.Doc. 193, at 16-17; App.Vol.9 2324-26 R.Doc. 217, at 5-7). Even accepting DRE's documents, material disputes remained about inspection, documentation, satisfactory delivery, and first breach.

The Addendum independently called DRE's delay a "default by Producer" and stated DRE "remained unable to satisfy its obligations" (Ex. 5, at 1). DRE then promised $1.5 million by October 22 but paid only $1 million (Ex. 5, at 1-2; App.Vol.9 2329-30 R.Doc. 217, at 10-11). The court excused the shortfall "particularly given Berkley's breaches" (App.Vol.9 2330 R.Doc. 217, at 11), which improperly assumed the disputed first-breach question. *Guidry*, 269 S.W.3d at 531-32.

The record of the parties' performance allowed a jury to find that DRE had not satisfied the conditions it invoked. Although some

Chinese masks cleared customs, documents for the second vessel remained unavailable, only limited quantities were immediately available, and cargo later remained in transit to an inspection warehouse (App.Vol.6 1282-90 R.Doc. 189-2, at 5-13). Customs clearance did not establish the invoiced quantity's availability, successful inspection, or required documents.

DRE's November 1 boxed-product demand identified neither an inventory count, source document, location, nor particular boxes (App.Vol.7 1748 R.Doc. 193-3, at 2; App.Vol.9 2330 R.Doc. 217, at 11). Instead, the inspection evidence concerned imported 50-count packages. Mr. Ortolani called them "the Chinese masks" and "not the U.S. production," while Mr. Heard described "unboxed" packages and reported quantities that did not reconcile (App.Vol.6 1536-37 R.Doc. 191-7, at 10-11; App.Vol.7 1592, 1597, 1601 R.Doc. 192-6, at 4, 9, 13).

The notation in Annex A "USA/PRC" did not establish that imported packages satisfied the separate boxed invoice (Ex. 1, at 11). Separate invoices and the record distinguished imported packages from boxed production (Ex. 3, at 1-4; Ex. 4, at 1-4; App.Vol.6 1532, 1536-37 R.Doc. 191-7, at 6, 10-11).

DRE admitted as uncontroverted Mr. Wheeler's testimony that Kansas City could not produce the contracted volume, its California operation remained a work in progress, DRE never manufactured there, and it lacked sufficient raw materials (App.Vol.8 1824-35 R.Doc. 198, at

6-17; App.Vol.8 1993 R.Doc. 207, at 8). It similarly accepted Mr. Eid's testimony that DRE lacked facilities capable of filling the order and needed to increase capacity (App.Vol.8 1840-41 R.Doc. 198, at 22-23; App.Vol.8 1996 R.Doc. 207, at 11).

This went to both sides' claims. Berkley's Counts 1-2 alleged DRE breached the same agreement in DRE's Counts 2 and 5 (App.Vol.1 214-15 R.Doc. 49, at 34-35). Once performance and first breach required factfinding, summary judgment could not run only for DRE. *BVS, Inc. v. CDW Direct, LLC*, 759 F.3d 869, 872-73 (8th Cir. 2014).

### B. Berkley's fraudulent inducement claim was not abandoned, and its theory that DRE lacked existing capacity was independent of DRE's contractual promises.

The court deemed Berkley's fraudulent inducement claims abandoned because Berkley supposedly did not answer DRE's economic loss argument (App.Vol.9 2334-35 R.Doc. 217, at 15-16). But Berkley discussed DRE's production lines, facilities, capacity, product handling, and ability to perform, invoked the court's earlier analysis, and cited Mr. Wheeler and Mr. Eid (App.Vol.7 1781-82 R.Doc. 194, at 10-11). The decision the court cited, *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, involved a failure to oppose a summary-judgment ground, not an opposition that addressed it. 558 F.3d 731, 735 (8th Cir. 2009).

Berkley's fraudulent inducement theory was grounded in existing facts in the record. Mr. Lyons stated that Mr. Bawany represented that

DRE had extensive experience and the resources and capacity to produce the required quantities quickly, inducing Berkley to contract and forbear (App.Vol.7 1709-10, 1715-16 R.Doc. 193, at 2-3, 8-9). Mr. Wheeler's and Mr. Eid's testimony allowed a finding that DRE in fact lacked the represented facilities, materials, and capacity (App.Vol.8 1824-35, 1840-41 R.Doc. 198, at 6-17, 22-23; App.Vol.8 1993, 1996 R.Doc. 207, at 8, 11).

The law of Missouri distinguishes a promise of future performance from a representation about existing capability, personnel, infrastructure, and experience. The question is whether the contract contains or conflicts with the representation, not whether both concern the same transaction. *Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890, 903-08 (D. Minn. 2014). The SPA required delivery but did not represent that DRE already possessed specified production lines, facilities, raw materials, personnel, or domestic capacity.

Accordingly, in *Web Innovations & Tech. Servs., Inc. v. Bridges to Digital Excellence, Inc.*, 69 F. Supp. 3d 928, 932-34 (E.D. Mo. 2014), representations about existing partners, workforce, and processing ability supported an inducement claim even though they bore on contractual performance. Here, DRE's alleged representations were materially the same.

The district court applied this distinction to DRE's fraud claims, allowing them to proceed based on Berkley's alleged buyers, escrow,

imminent payment, and ability to perform, but rejected Berkley's fraudulent inducement claims because production and delivery appeared in the agreement (App.Vol.3 663-66 R.Doc. 121, at 5-8; App.Vol.9 2334-35 R.Doc. 217, at 15-16 & n.11). That reasoning improperly conflated performance with existing ability to perform. *Superior Edge*, 44 F. Supp. 3d at 904-07.

The contrary decisions DRE and the court cited involved representations about the quality of goods delivered, not existing capacity inducing contract formation. The claim in *Trademark Med., LLC v. Birchwood Labs., Inc.*, was not for fraudulent inducement, and the court recognized that an inducement claim ordinarily remains independent. 22 F. Supp. 3d 998, 1003-04 (E.D. Mo. 2014). The alleged representations in *Hardwood Lumber, Inc. v. Brewco Inc.,* No. 6:18-cv-03299-RK, 2020 WL 3415871, at *2-3 (W.D. Mo. June 22, 2020), concerned the quality, yield, and labor requirements of the sawmill delivered, not inducement.

If the Court reinstates the original judgment under Issue II, no new trial on DRE's contract claims is necessary. But if any retrial on those claims remains necessary, this Court also should reverse the district court's partial summary judgment and remand this case for trial on DRE's Counts 2 and 5 as to *both* liability and damages, Berkley's Counterclaims 1 and 2, and Berkley's Counterclaim 6 and Third-Party Claim 1 against DRE and Mr. Bawany.

## IV. The district court erred in holding Mr. Lyons personally liable for Berkley's judgment.

*Standard of Appellate Review*

The district court treated DRE's post-judgment motion to pierce Berkley's corporate veil as a renewed Rule 50 motion (App.Vol.16 3916 R.Doc. 346, at 3). The standard of review for judgment as a matter of law is stated above at p. 27.

* * *

Federal law did not allow DRE to obtain personal judgment on contract claims that requested relief only from Berkley and that Berkley expressly refused to try by consent. To prove veil-piercing, the law of Missouri also required DRE to prove wrongful use of control and causation, not merely control and inability to pay, which it did not. The court imposed personal liability despite both defects. This was error.

### A. DRE waived veil-piercing when it did not plead personal liability on its contract claims and Berkley did not consent to try it.

DRE had to give the defendants fair notice of its claims and the relief it sought. Fed. R. Civ. P. 8(a)(2)-(3). While veil piercing is a remedy rather than an independent cause of action, it still must be pleaded and requested. *TAMKO Roofing Prods., Inc. v. Smith Eng'g Co.,* 450 F.3d 822, 826 (8th Cir. 2006) (plaintiff amended its complaint to request that remedy against the controlling entity). Here, Counts II and V named only Berkley and requested judgment only against

Berkley (App.Vol.1 76-77, 79-80 R.Doc. 1, at 17-18, 20-21). DRE did not request that the court disregard Berkley's separate existence or impose its contractual obligations on Mr. Lyons.

An unpleaded issue is treated as pleaded only when the parties try it by express or implied consent. Fed. R. Civ. P. 15(b)(2). Implied consent requires actual notice and an adequate opportunity to address the new issue, *Trip Mate, Inc. v. Stonebridge Cas. Ins. Co.,* 768 F.3d 779, 784-86 (8th Cir. 2014), and cannot arise unless the parties "squarely recognize" that issue as being tried. *Standard Title Ins. Co. v. Roberts,* 349 F.2d 613, 620-21 (8th Cir. 1965).

Here, Berkley expressly refused to consent to try an unpleaded veil-piercing claim. At the beginning of trial, it objected that DRE's contract counts neither named Mr. Lyons nor pleaded an alter ego theory against him (Tr. 39-42). During the instruction conference, Berkley renewed that objection and made "abundantly clear" that it was preserving the pleading defect for appeal (Tr. 1692-93). It again objected that DRE's pleadings and prayers sought "no relief whatsoever against Mr. Lyons individually," a concern the court found had "a lot of credibility" (Tr. 1713).

The parties later agreed that the jury would receive no veil-piercing instruction because DRE considered the issue equitable (Tr. 1700-01, 1721-22, 1729-30). Berkley asked whether it retained the right after the verdict to dispute whether DRE had established the

elements while preserving its pleading objection (Tr. 1726-27). The court confirmed that Berkley was "not waiving anything" (Tr. 1727).

Despite all of this, the district court inferred consent from Berkley's defensive proposed instruction and its failure to repeat the pleading objection in its written post-trial opposition (App.Vol.16 3916-18 R.Doc. 346, at 3-5). But a conditionally proposed instruction, never given and accompanied by express objections, proves no consent. At most, it shows preparation for possible jury submission if Berkley's objection failed, not consent to post-verdict adjudication by the court. No further formal exception was necessary after the court confirmed Berkley was "not waiving anything." Fed. R. Civ. P. 46. A Rule 15(b) contention is not waived by failing to object to instructions or special-verdict forms. *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1062-64 (8th Cir. 1997). Nor did Berkley's alternative response on the merits surrender its preserved objection. Berkley objected at the outset of trial, renewed its objection during trial, and preserved it before the issue was withdrawn from the jury.

Fed. R. Civ. P. 54(c) did not cure DRE's failure to plead the issue or obtain consent to try it. It allows relief not demanded in a pleading, but not when the omission prevented a realistic appraisal of the opposing party's exposure and altered its litigation strategy. *Baker v. John Morrell & Co.,* 382 F.3d 816, 830-32 (8th Cir. 2004). Rule 54(c) does not authorize judgment on an unpleaded issue that Rule 15(b)(2)

did not bring into the case. *See Cioffe v. Morris,* 676 F.2d 539, 541-43 (11th Cir. 1982). Accordingly, DRE could not use a post-verdict motion to impose its contract judgment on Mr. Lyons personally because it had never pleaded the issue or obtained consent to try it.

### B. Berkley's capitalization did not establish wrongful use of the corporate form.

A corporation ordinarily remains separate from its shareholders. Veil piercing requires (1) complete control, (2) use of that control to commit a fraud, wrong, violation of duty, or dishonest act, and (3) proximate causation. *Collet v. Am. Nat'l Stores, Inc.,* 708 S.W.2d 273, 283-84 (Mo. Ct. App. 1986). But control alone is insufficient without impropriety in establishing or using the corporation. *Blanks v. Fluor Corp.,* 450 S.W.3d 308, 375-77 (Mo. Ct. App. 2014). And undercapitalization may support an inference of impropriety but is not itself unlawful; limited liability exists "precisely to protect" an owner whose controlled entity becomes insolvent. *Radaszewski v. Telecom Corp.,* 981 F.2d 305, 308-11 (8th Cir. 1992).

Because the court treated DRE's veil-piercing motion as one for judgment as a matter of law, every reasonable inference favored Berkley and Mr. Lyons. *Weitz Co. v. MH Wash.*, 631 F.3d 510, 519-20 (8th Cir. 2011). Although the court found control, its own treatment of the wrongdoing element foreclosed judgment.

The court acknowledged that Berkley's breach alone was insufficient and the evidence allowed an inference that Mr. Lyons did not undercapitalize Berkley to evade DRE (App.Vol.16 3920, 3921-22 R.Doc. 346, at 7 n.8, 8-9). It also rejected the $1.9 billion proof-of-funds theory because Mr. Dobi sent the image, Mr. Lyons denied knowledge, and the evidence did not establish that he directed it (App.Vol.16 3922-23 R.Doc. 346, at 9-10). That left undercapitalization as the only claimed wrong.

The remaining evidence did not compel a finding of improper purpose. Berkley was formed to purchase and resell PPE, and Mr. Lyons personally supplied its $3 million payment (App.Vol.9 2391-92 R.Doc. 227, at 1-2; Tr. 758; App.Vol.16 3919 R.Doc. 346, at 6). The court identified no asset stripping, transfer of business, or removal of money after DRE's claim arose (App.Vol.16 3920-22 R.Doc. 346, at 7-9). The evidence at least allowed an inference that owner funding would accompany Berkley's transactions, not that Mr. Lyons deliberately deprived it of funds.

Authorities finding wrongdoing involved owners who used unfunded shells to impose known risks on parties compelled to deal with them, arranged obligors "precisely so" they could not pay, stripped assets, shifted operations among successors, or transferred assets after judgment. *See, e.g.*, *66, Inc. v. Crestwood Commons Redev. Corp.*, 998 S.W.2d 32, 40-42 (Mo. 1999); *Sisson v. Patel*, No. 20-05101-CV-SW-BP,

2022 WL 497347, at *8-10 (W.D. Mo. Jan. 26, 2022); *Collet*, 708 S.W.2d at 286-87; *KC Roofing Ctr. v. On Top Roofing, Inc.*, 807 S.W.2d 545, 549-50 (Mo. Ct. App. 1991); *Sansone v. Moseley*, 912 S.W.2d 666, 669-70 (Mo. Ct. App. 1995).

There is nothing comparable here. As a matter of law, the district court's own favorable inference about Mr. Lyons's intent precluded making Berkley's capitalization conclusive proof of wrongdoing.

### C. DRE did not prove that any misuse of the corporate form caused its loss.

Missouri's third veil-piercing element separately requires proof that misuse of control proximately caused the loss. *Collet*, 708 S.W.2d at 284. Berkley's alleged breach, DRE's damages, and Berkley's present inability to pay show a contract dispute and collection problem, not that Mr. Lyons's wrongful use of control caused either the breach or loss.

This Court's decision in *Weitz* illustrates the distinction. Although the dominant entity controlled the corporation and directed the acts causing breach, the Court rejected veil piercing because "Missouri law does not state that a breach of contract by the controlled corporation caused by the dominant corporation satisfies Collet's second prong." 631 F.3d at 521-22. The district court made the same error by treating Berkley's breach and inability to pay as substitutes for misuse and causation.

There was no asset transfer or other misuse that changed Berkley's ability to pay. Once the court drew the inference that Berkley was not undercapitalized to evade DRE and rejected the separate fraud theory, inability to satisfy a later judgment could not establish causation (App.Vol.16 3920-23 R.Doc. 346, at 7-10).

The evidence did not establish the second and third Missouri veil-piercing elements as a matter of law. This Court should reverse the order imposing Berkley's liabilities on Mr. Lyons.

## V. This Court should reassign any further proceedings below to a different district judge.

*Standard of Appellate Review*

This Court decides for itself whether to reassign a case to a different district judge on remand. *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 667-68 (8th Cir. 2022).

* * *

28 U.S.C. § 2106 allows this Court to reassign a case to a different judge on remand when the cumulative record would cause a reasonable observer to question the court's impartiality, without requiring actual bias. Here, the district court displaced the jury's verdict, entered more than $232 million against Berkley and Mr. Lyons, ordered new trials, branded Mr. Lyons's affidavit a sham, and found that former counsel "poisoned the jury." Any remand would return the same parties and issues to a court that already categorically resolved them against Berkley and Mr. Lyons. Reassignment is warranted.

This Court may "require such further proceedings to be had as may be just under the circumstances." 28 U.S.C. § 2106. It may reassign a case to a different district judge on remand even without a recusal request below. *United States v. Tucker*, 78 F.3d 1313, 1323-24 (8th Cir. 1996). The objective question is whether a reasonable person aware of the history would harbor doubts about impartiality. *Tumey,* 27 F.4th at 668. Reassignment protects "the appearance as well as the

reality of impartial justice" and implies neither actual bias nor misconduct. *Sentis Grp., Inc. v. Shell Oil Co.,* 559 F.3d 888, 904 (8th Cir. 2009); *Tucker,* 78 F.3d at 1325.

The record here extends beyond adverse rulings. The district court found DRE's damages proof "so one-sided" that DRE had to prevail, called the verdict "shockingly inadequate," and declared Berkley's cross-examination insufficient (App.Vol.14 3605-17 R.Doc. 345, at 15-27). It called Mr. Lyons's affidavit a "sham" and concluded that former counsel advanced theories about the SPA being altered, invoices being backdated, breach, and nonconformity without a good faith basis, acted in bad faith, "poisoned the jury," and prolonged the litigation (App.Vol.14 3683-89 R.Doc. 345, at 93-99). It then imposed the judgment on Mr. Lyons personally (App.Vol.16 3918-24 R.Doc. 346, at 5-11).

A new damages trial would return to proof the court declared conclusive and cross-examination it declared insufficient. A trial on liability and counterclaims would require the same breach, nonconformity, and other theories it found counsel lacked a good faith basis to advance. Further proceedings involving Mr. Lyons would return to testimony the court characterized as a sham. The court could not proceed without revisiting conclusions to which it expressed an unusually firm commitment.

Most pertinent, in *Tumey*, this Court directed reassignment of another case from this same district judge after considering the entire history, proceedings, and order. 27 F.4th at 668. The cumulative record here presents the same objective concern.

This Court should exercise its authority under § 2106 and direct that any further proceedings on remand be assigned to a different district judge.

## Conclusion

This Court should reverse the district court's order granting DRE judgment as a matter of law and a conditional new trial, vacate the $165,428,171 judgment and its dependent prejudgment-interest award, and reinstate the original judgment.

Alternatively, the Court should reverse the Rule 50 judgment and the partial summary-judgment order and remand for a new trial on DRE's contract claims as to liability and damages, Berkley's contract counterclaims, and Berkley's fraudulent-inducement counterclaim and third-party claim.

And in any case, the Court should reverse the veil-piercing order and direct that any further proceedings occur before a different district judge.

Respectfully submitted,

*Jonathan Sternberg, Attorney, P.C.*

by /s/Jonathan Sternberg
Jonathan Sternberg, Mo. #59533
2323 Grand Boulevard #1100
Kansas City, Missouri 64108
(816) 292-7020
jonathan@sternberg-law.com

COUNSEL FOR APPELLANTS

**Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Typestyle Requirements**

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because this brief contains 12,982 words excluding the parts of the brief exempted by Rule 32(f).

I further certify that this brief complies with the typeface requirements of Rule 32(a)(5) and typestyle requirements of Rule 32(a)(6), because this brief has been prepared in a proportionally spaced typeface, 14-point Century Schoolbook font, using Microsoft Word for Office 365.

I further certify that the electronic copies of both this brief and its addendum filed via the Court's ECF system are exact, searchable PDF copies of the originals, that they were scanned for viruses using Microsoft Windows Defender, and that according to that program they are free of viruses.

/s/Jonathan Sternberg
Attorney

## Certificate of Service

I certify that on July 31, 2026, I electronically submitted the foregoing to the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit for review by using the CM/ECF system.

/s/Jonathan Sternberg
Attorney